## B. S. FULLINGTON *v.* HORACE GOODWIN.*

*Trespass quare clausum. Fence, when not a part of realty.*

The defendant was lessee and in possession of a farm purchased by the plaintiff before the termination of the lease, and quit under an agreement with the plaintiff, that he could take away for fire-wood " from fallen trees, or dead wood," for his use during one winter. He drew off three or four loads of old rails, the refuse material of a fence which had been removed; *Held,* that it was no part of the realty as being a fence; and that trespass *quare clausum* would not lie.

TRESPASS, *quare clausum.* Heard on the report of a referee, December Term, 1883, POWERS, J., presiding. Judgment for the plaintiff.

It appeared, that on July 29, 1881, one Hunt conveyed by quit-claim deed the premises in question to the plaintiff, reserving possession till March 15, 1882; that the defendant was in possession under a parol lease from Hunt, which terminated in May, 1882; that under a subsequent arrangement the plaintiff was to have possession on October 20, 1881; that, accordingly, the defendant vacated the premises, and the plaintiff took possession.

The referee found :

" I find that at the date of the plaintiff's deed the defendant was in possession under a lease from Hunt to him or his

*Heard, August Term, 1884.

41

wife, with the right to get fire-wood for his use, as reserved in Hunt's deed, and that at the time of the hay trade in October, it was agreed by the plaintiff that the defendant might take away wood from fallen trees, or dead wood as it was called, for his use that winter, and whatever wood he drew away from the premises other than the fence rails and hemlock log hereinafter mentioned, was taken from fallen timber of the kind agreed upon, and no recovery therefor can be had."   *   *   *   *

" The plaintiff claimed to recover for the removal of a quantity of rail fence. I find that in the spring of 1881, Hunt and Goodwin by mutual consent removed a fence from the foot of the hill dividing their meadow and pasture, to the top of the same hill, thus taking into the meadow a strip from the pasture. This fence was from 20 to 30 rods in length—two thirds of which was made of posts and boards, and the rest of rails. The posts and boards were taken to the top of the hill and put into a new fence; but the rail fence was old, rotten, and substantially worthless for fencing purposes. A few rails were taken out and used in patching up other fences on the farm; the rest of this fence was good for nothing except wood; and at the time of taking up this fence, it was understood by Hunt and Goodwin that the rest of the material of this rail fence should be used by Goodwin for wood. Most of it was drawn and put into the shed at the house before July 29, 1881; three or four loads of refuse material was drawn away by the defendant after he left the premises, October 20, 1881; he also drew from the shed, after said October 20th, what was there. The rails drawn away from the shed and used by defendant for wood were worth $2; the refuse drawn from the site of the old fence was worth 25 cents."

*Gleed,* for the plaintiff.

*T. J. Boynton* and *B. A. Hunt,* for the defendant.

The opinion of the court was delivered by

VEAZEY, J. The portion of the former rail fence that was taken away by the defendant, was not when so taken, nor when the deed of the premises was executed, nor when the defendant vacated the premises, in use as a fence, nor was it

fit for a fence or designed to be so used. It was therefore no part of the realty by reason of being a fence. It was in fact just what the owner and lessee understood it to be, not a fence, but "dead wood" which the lessee was to have, and this long before the deed.

Judgment reversed, and judgment for the defendant for costs.